UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

_____

MELISSA FILLMAN, :
         Plaintiff, :
          :
    v. : No. 13-cv-01609
          :
VALLEY PAIN SPECIALISTS, P.C., et al., :
         Defendants. :
_____

**MEMORANDUM OPINION**

**Joseph F. Leeson, Jr.**                                                                  **January 14, 2016**
**United States District Judge**

**A.**     **Introduction**

Plaintiff Melissa Fillman brought this action against Defendants Valley Pain Specialists, P.C., Valley Surgical Center, Inc., and Dr. Steven Mortazavi, alleging discrimination on the basis of sex and retaliation in violation of Title VII of the Civil Rights Act of 1964 and the Pennsylvania Human Relations Act, as well as other related claims. Plaintiff sought compensatory damages, punitive damages, and front and back pay, as well as other relief. Although the parties did not agree to a jury determination on back pay and front pay, the Court, upon the stipulation of both parties, submitted the question of whether Plaintiff is entitled to back pay and front pay to the jury on an advisory basis. Special interrogatories answered by the jury determined, on an advisory basis, the amount of front pay and back pay to which Plaintiff was entitled.

The jury found that Defendants had discriminated against Plaintiff on the basis of sex and had retaliated against her. The jury awarded compensatory damages against all Defendants and

1

punitive damages against only the corporate Defendants. See Minute Entry for Proceedings Held on November 9, 2015, ECF No. 62. In its advisory role, the jury found Plaintiff was entitled to back pay damages of $80,460.42 but was not entitled to any front pay damages. See id.

Pursuant to Rule 52 of the Federal Rules of Civil Procedure, when an advisory jury is used, the Court must make specific findings of fact and conclusions of law on the matters that were submitted to the jury on an advisory basis. The Court therefore makes the following findings of fact and conclusions of law as to the issues of back pay and front pay.

**B.     Findings of Fact**

1. Plaintiff was employed by Valley Pain Specialists as the Director of Nursing from April 27, 2009, through November 18, 2011. Employment Contract, Ex. 21; Trial Tr. 48, Nov. 2, 2015; Trial Tr. 39, 53, Nov. 3, 2015; Trial Tr. 163, Nov. 4, 2015.

2. Plaintiff performed the majority of her work at Valley Surgical Center, a facility located in the same building as Valley Pain Specialists. Trial Tr. 54-55, 58, Nov. 2, 2015; Trial Tr. 29-30, Nov. 5, 2015.

3. Both Valley Pain Specialists and Valley Surgical Center are owned and operated by Dr. Steven Mortazavi. Trial Tr. 54-55, Nov. 2, 2015; Trial Tr. 36-37, Nov. 5, 2015.

4. The terms and conditions of Plaintiff's employment were set forth in an employment contract dated March 31, 2009, which established a base salary of $70,000 and provided for health insurance benefits. Employment Contract, Ex. 21; Trial Tr. 49-54, Nov. 2, 2015.

5. After receiving a positive performance review on April 29, 2010, Plaintiff's base salary was increased to $75,000 plus benefits, where it remained until her last day of work on November 18, 2011. Performance Review Memorandum, Ex. 22; Trial Tr. 62-63, Nov. 2, 2015.

6.      Dr. Mortazavi believed Plaintiff performed her duties in an exemplary fashion, was always an excellent nurse, and was one of the two best employees in the organization. Trial Tr. 23, 159, Nov. 4, 2015.

7.      Plaintiff had a sufficient amount of work to continue on a full-time basis, regardless of any decline in Defendants' total number of surgical procedures between 2010 and 2011. See Trial Tr. 240-41, 243, Nov. 4, 2015.

8.      Defendants' claim that they sought to reduce Plaintiff's salary because of a decline in the volume of work is not credible. See Trial Tr. 127, Nov. 4, 2015; Trial Tr. 110-11, Nov. 5, 2015.

9.      Following Plaintiff's termination from Valley Pain Specialists on November 18, 2011, Plaintiff was not employed for the remainder of 2011. Based on her previous salary of $75,000, she would have earned $8,653.86 for the remainder of 2011. See Pl.'s Summ. Wage/Health Benefits, Ex. 213; Pl.'s 2011 W-2 Statement, Ex. 1; Trial Tr. 39, 53, Nov. 3, 2015.

10.     From January 2, 2012, to the time of trial, Plaintiff has been employed as a registered nurse at Fresenius Medical Care, a dialysis clinic. See Pl.'s 2012, 2013, and 2014 W-2 Statements, Exs. 2, 3, 212; Trial Tr. 47, Nov. 3, 2015.

11.     In 2012, Plaintiff earned $54,329.84,[1] which is $20,670.16 less than her previous salary of $75,000.  Pl.'s Summ. Wage/Health Benefits, Ex. 213; Pl.'s 2012 W-2 Statement, Ex. 2; Trial Tr. 49-50, 53-54, Nov. 3, 2015.

12.     For forty weeks of work in 2013, Plaintiff earned $43,459.50,[2] which is $14,232.80 less than she would have earned for that same period of time at her previous salary of

---

[1]     Plaintiff earned $27.50 per hour in 2012. Pl.'s Summ. Wage/Health Benefits, Ex. 213; Trial Tr. 54, Nov. 3, 2015.

3

$75,000.[3] See Pl.'s Summ. Wage/Health Benefits, Ex. 213; Pl.'s 2013 W-2 Statement, Ex. 3; Trial Tr. 50, 54, Nov. 3, 2015.

13. In 2014, Plaintiff earned $65,283.45,[4] which is $9,716.55 less than her previous salary of $75,000. Pl.'s Summ. Wage/Health Benefits, Ex. 213; Pl.'s 2014 W-2 Statement, Ex. 212; Trial Tr. 52, 55, Nov. 3, 2015.

14. In 2015 (until the time of trial), Plaintiff earned $54,272.85, which is $9,188.79 less than she would have earned over that time at her previous salary of $75,000.[5] Pl.'s Summ. Wage/Health Benefits, Ex. 213.

15. In total, from the date of her termination to the start of trial, Plaintiff earned $62,462.16 less than she would have earned for that same time period, based on her previous salary of $75,000.

16. Plaintiff's annual salary at the time of trial was approximately $67,392, which is $7,608 less than her previous salary of $75,000. Pl.'s Summ. Wage/Health Benefits, Ex. 213; Trial Tr. 58, Nov. 3, 2015.

---

[2] Starting March 31, 2013, Plaintiff's hourly rate increased to $28.18. In 2013, Plaintiff took twelve weeks of unpaid leave after giving birth to her second child. Pl.'s Summ. Wage/Health Benefits, Ex. 213; Pl.'s 2012 W-3 Statement, Ex. 3; Trial Tr. 50, Nov. 3, 2015.

[3] Plaintiff would have earned $57,692.30 for forty weeks of work at her previous salary. In Plaintiff's testimony and in her Exhibit 213, titled "Summary of Wage/Health Benefit Damages," Plaintiff calculated her lost wages for 2013 at $18,014.10 by subtracting the amount that she would have earned for fifty-two weeks of work at Fresenius Medical Care that year ($56,985.90) from the amount that she would have earned for fifty-two weeks of work at Valley Pain Specialists ($75,000). However, a more accurate measure of her losses for 2013 is reached by subtracting the amount she earned for forty weeks of work at Fresenius from the amount that she would have earned for forty weeks of work at Valley Pain Specialists.

[4] Starting March 30, 2014, Plaintiff's hourly rate increased to $31.90. Pl.'s Summ. Wage/Health Benefits, Ex. 213; Trial Tr. 55, Nov. 3, 2015.

[5] Starting March 29, 2015, Plaintiff's hourly rate increased to $32.40. Pl.'s Summ. Wage/Health Benefits, Ex. 213; Trial Tr. 55, Nov. 3, 2015.

17. In 2011, Plaintiff paid $98.43 every two weeks for health, dental, and vision benefits under a plan offered by Valley Pain Specialists, which amounts to a total payment of $2,559.18 per year. Pl.'s Summ. Wage/Health Benefits, Ex. 213; Trial Tr. 56, Nov. 3, 2015.

18. Following her termination, Plaintiff paid $560.00 for health benefits for her daughter for the remainder of 2011, a cost that she would not have incurred if she had remained under the benefit plan at Valley Pain Specialists. Pl.'s Summ. Wage/Health Benefits, Ex. 213; Trial Tr. 56, Nov. 3, 2015.

19. In 2012, Plaintiff paid $6,015.99 for health benefits, which is $3,456.81 more than she paid at Valley Pain Specialists in 2011. Pl.'s Summ. Wage/Health Benefits, Ex. 213; Pl.'s 2012 W-2 Statement, Ex. 2; Trial Tr. 50, 57, Nov. 3, 2015.

20. In 2013, Plaintiff paid $6,183.66 for health benefits, which is $3,624.48 more than she paid at Valley Pain Specialists in 2011. Pl.'s Summ. Wage/Health Benefits, Ex. 213; Pl.'s 2013 W-2 Statement, Ex. 3; Trial Tr. 51, 57, Nov. 3, 2015.

21. In 2014, Plaintiff paid $6,067.62 for health benefits, which is $3,508.44 more than she paid at Valley Pain Specialists in 2011. Pl.'s Summ. Wage/Health Benefits, Ex. 213; Pl.'s 2014 W-2 Statement, Ex. 212; Trial Tr. 52, 57, Nov. 3, 2015.

22. From January to November 2015 (the time of trial), Plaintiff paid $5,232.70 for health benefits, which is $3,067.24 more than she paid at Valley Pain Specialists for health benefits from January to November 2011. Pl.'s Summ. Wage/Health Benefits, Ex. 213; Trial Tr. 56, Nov. 3, 2015.

23. In total, from the date of her termination to the start of trial, Plaintiff paid an additional $14,216.97 for health benefits compared to what she would have paid under the terms of her 2011 health plan at Valley Pain Specialists.

24. Absent Defendants' discriminatory conduct, Plaintiff would have maintained her position at Valley Pain Specialists at the same salary and benefits that she held at the time of her termination.

25. Reinstatement of Plaintiff to her previous position is inappropriate because of the likelihood of continuing disharmony between the parties and because Plaintiff's position has been filled. See Trial Tr. 108-09, Nov. 3, 2015; Trial Tr. 40-41, 109-111, Nov. 4, 2015.

**C. Conclusions of Law**

**1. Legal Standards**

"If a district court finds that an employer has engaged in an unlawful employment practice, Title VII authorizes, inter alia, a back pay award." Booker v. Taylor Milk Co., 64 F.3d 860, 864 (3d Cir. 1995). "Back pay is designed to make victims of unlawful discrimination whole by restoring them to the position they would have been in absent the discrimination." Donlin v. Philips Lighting N. Am. Corp., 581 F.3d 73, 84 (3d Cir. 2009). There is "a presumption in favor of a back pay award" under Title VII. Booker, 64 F.3d at 864.

"Though back pay makes a plaintiff whole from the time of discrimination until trial, a plaintiff's injury may continue thereafter. Accordingly, courts may award front pay where a victim of employment discrimination will experience a loss of future earnings because she cannot be placed in the position she was unlawfully denied." Donlin, 581 F.3d at 86. "Front pay is an alternative to the traditional equitable remedy of reinstatement, which would be inappropriate where there is a likelihood of continuing disharmony between the parties," or where reinstatement is "unavailable because no comparable position exists." Id. (citation omitted). The Court is to award front pay "for a reasonable future period required for the victim

to reestablish her rightful place in the job market." Id. (quoting Goss v. Exxon Office Sys. Co., 747 F.2d 885, 889 (3d Cir. 1984)).

The United States Court of Appeals for the Third Circuit has observed that "there will often be uncertainty concerning how long the front-pay period should be, and the evidence adduced at trial will rarely point to a single, certain number of weeks, months, or years." Id. at 87.

> More likely, the evidence will support a range of reasonable front-pay periods. Within this range, the district court should decide which award is most appropriate to make the claimant whole. . . . Such an exercise of discretion may result in an award different from what one or both of the parties would prefer. This possibility is caused by the inexactness of predictive evidence for front pay.

Id.

"Back pay and front pay are equitable remedies to be determined by the court." Id. at 78 n.1. The court may use the verdict of an advisory jury "as an advisory aid in making findings of fact," Taxin v. Food Fair Stores, Inc., 24 F.R.D. 457, 460 n.3 (E.D. Pa. 1959) (quoting Hurwitz v. Hurwitz, 136 F.2d 796, 799 (D.C. Cir. 1943)), and to "enlighten the conscience of the Court," Hine v. Mineta, 238 F. Supp. 2d 497, 499 (E.D.N.Y. 2003) (quoting Skoldberg v. Villani, 601 F. Supp. 981, 982 (S.D.N.Y. 1985)). However, "findings by an advisory jury are not binding, for the ultimate responsibility for finding the facts remains with the court." Wilson v. Prasse, 463 F.2d 109, 116 (3d Cir. 1972); see also Hamm v. Nasatka Barriers Inc., 166 F.R.D. 1, 3 (D.D.C. 1996) ("An advisory jury is an optional aid to an independent court, not the factfinder or decision-maker. . . . An advisory verdict has no force, other than persuasive, on the court, which remains the sole and final decision-maker."). Nevertheless, "[a]lthough a trial court is in no way bound by the answers of an advisory jury, it may adopt the jury's findings as its own." Greenwood v. Greenwood, 234 F.2d 276, 278 (3d Cir. 1956).

**2.     Back Pay Award**

For the following reasons, the Court adopts the advisory jury's award as to back pay (with one modification, explained below) but does not adopt the advisory jury's decision to decline to award front pay. As set forth above, Plaintiff's employer acknowledged that she was an exemplary nurse, a great asset to Valley Pain Specialists, and had no shortage of work. Absent Defendants' discriminatory conduct, Plaintiff would have maintained her position at Valley Pain Specialists at the same salary and benefits that she held at the time of her termination. Accordingly, the Court awards Plaintiff back pay in the amount of $76,679.12,[6] which represents the difference between the amount Plaintiff would have earned from the time of her termination until the start of trial, based on her previous salary and benefits, and the amount that she actually earned in her new employment, as well as the difference in the cost of health benefits.

**3.     Prejudgment Interest on Back Pay Award**

Title VII authorizes prejudgment interest as part of the back pay remedy in actions against private employers. Booker, 64 F.3d at 868. The Third Circuit has observed that there is "a strong presumption in favor of awarding prejudgment interest." Id. "To determine the applicable interest rate, the Third Circuit has instructed that the district court may use the rate contained in the federal post-judgment interest rate statute, 28 U.S.C. § 1961(a), for guidance." Loesch v. City of Phila., No. CIV. A. 05-CV-0578, 2008 WL 2557429, at *8 (E.D. Pa. June 25, 2008) (citing Sun Ship, Inc. v. Matson Navigation, Co., 785 F.2d 59, 63 (3d Cir. 1986)). The post-judgment interest statute provides that "interest shall be calculated from the date of the entry

---

[6]     The advisory jury awarded $80,460.42 in back pay damages, apparently in reliance on Plaintiff's Exhibit 213, titled "Summary of Wage/Health Benefit Damages," which cites this amount as Plaintiff's total back pay losses. As set forth above, the Court calculates Plaintiff's lost wages for 2013 by using a different calculation from that used in Exhibit 213. As a result, the Court reaches the total sum of $76,679.12 rather than $80,460.12 for Plaintiff's back pay damages.

of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding . . . the date of the judgment." 28 U.S.C. § 1961(a). A number of courts in this district have employed a modified version of this approach in employment discrimination cases by "utilizing the T-bill rate available at the end of each year" of back pay to calculate the interest due for damages sustained in that year. See O'Neill v. Sears, Roebuck & Co., 108 F. Supp. 2d 443, 446 (E.D. Pa. 2000); Loesch, 2008 WL 2557429, at *8. This Court will do the same. The yearly calculations are as follows:

| Period | Accrued Back Pay and Interest | 1-Year T-Bill[7] | Interest | Total |
|---|---|---|---|---|
| Nov.-Dec. 2011 | $9,213.86 | .12% | $1.84[8] | $9,215.70 |
| 2012 | 9,215.70 <br> + 24,126.97 <br> 33,342.67 | .16% | 53.35 | 33,396.02 |
| 2013 | 33,396.02 <br> + 17,857.28 <br> 51,253.30 | .13% | 66.63 | 51,319.93 |
| 2014 | 51,319.93 <br> + 13,224.99 <br> 64,544.92 | .27% | 174.27 | 64,719.20 |
| 2015 | 64,719.20 <br> + 12,256.03 <br> 76,975.22 | .65% | 500.33 | 77,475.56 |
| 2016 | 77,475.56 | .65% | 19.36[9] | 77,494.92 |

Accordingly, Plaintiff is awarded a total of $815.78 in prejudgment interest on her back pay award.

---

[7] These figures are available under the "Services" section of the website for the United States District Court for the Eastern District of Pennsylvania, https://www.paed.uscourts.gov/services/post-judgment-interest-rate

[8] To account for the fact that interest runs for only two months, the $11.06 figure is reduced by 5/6 to $1.84.

[9] For interest accrued during the first two weeks of 2016.

**4.     Front Pay Award**

At the time of trial, Plaintiff's salary at her new place of employment, Fresenius Medical Care, remained significantly below her previous salary at Valley Pain Specialists. Based on this difference in salary, Plaintiff will continue to experience a loss of future earnings and is entitled to an award of front pay to compensate her for this loss. More specifically, the Court finds that Plaintiff is entitled to two years and two months of front pay – a period of time that is sufficient to allow Plaintiff to establish her rightful place in the job market – in the total amount of $13,928.36. This award is based on the following considerations. First, for the remaining two months of 2015, after the time of trial, Plaintiff is entitled to front pay in the amount of $1,298.36.[10] Second, for 2016 Plaintiff is entitled to front pay in the amount of $4,220, an amount that is based on the expectation that Plaintiff will receive a pay raise in 2016 commensurate with that which she has received in previous years and will earn approximately $70,780.00 for the year.[11] For 2017, Plaintiff is entitled to front pay in the amount of $830.00, an amount that is based on the expectation that Plaintiff will again receive a pay raise in 2017 and will earn approximately $74,170.00 for the year.[12] Finally, the Court awards Plaintiff $7,580.00 in front pay for two months and two years of health benefits, based on the expectation that

---

[10]     As set forth above, Plaintiff's back pay damages for 2015 were calculated for forty-four weeks. For the remaining four pay periods (or eight weeks), Plaintiff would have earned $11,538.36 at Valley Pain Specialists. For eight weeks of work (or 320 hours) at Plaintiff's current salary of $32.40 per hour, Plaintiff would earn $10,240. Thus, the amount of Plaintiff's damages for the remaining portion of 2015 is calculated by subtracting $10,240 from $11,538.36.

[11]     This figure is based on 2,080 hours of work per year (forty hours per week for fifty-two weeks). Plaintiff has received a pay raise in each of the three years that she has worked at Fresenius; on average, Plaintiff's hourly rate has increased by approximately $1.63 per year. See supra notes 1, 2, 4, 5. A similar raise in 2016 would result in an hourly rate of $34.03.

[12]     This figure reflects an hourly rate of $35.66, for 2,080 hours of work per year.

Plaintiff's health care costs will remain approximately $3,500 more per year than they would have been at Valley Pain Specialists.

**5.     Front Pay Present Value Calculation**

The final step in the front pay calculation is to reduce the award to present value. See, e.g., Thompson v. Cent. Sec. Agency, Inc., No. CIV. A. 98-2474, 1999 WL 126918, at *3 (E.D. Pa. Mar. 8, 1999) (discounting front pay award to present value); Barbour v. Merrill, 48 F.3d 1270, 1280 (D.C. Cir. 1995) ("All that remained was for [the court] to determine . . . the [front pay] award's present value, using an appropriate discount rate."). "Courts have taken a variety of approaches to the adjustment issue." See Baker v. John Morrell & Co., 263 F. Supp. 2d 1161, 1187 (N.D. Iowa 2003) (describing various approaches). Here, the Court will apply the average T-Bill rate for the week ending January 1, 2016, to adjust Plaintiff's front pay awards for 2016 and 2017[13] as follows:[14]

| Year | Front Pay | Discount Rate | Present Value |
|---|---|---|---|
| 2016 | $7,720 | .66% | $7,669.38 |
| 2017 | 4,330 | .66% | 4,273.59 |

Accordingly, Plaintiff's adjusted front pay benefits for 2015 ($1,878.36), 2016 ($7,669.38), and 2017 ($4,273.59) amount to a total of $13,821.33.

**D.     Conclusion**

Plaintiff is entitled to a back pay award of $77,494.92 (including prejudgment interest) and a front pay award of $13,821.33 (adjusted to present value). A separate order follows.

---

[13]     In view of the fact that the Court is issuing this Memorandum and the accompanying Order after 2015, the Court will not adjust Plaintiff's front pay award for the months of November and December 2015.

[14]     The Court uses the following formula: $PV = \$\_\_/(1+r)^t$, where "r" stands for the discount rate and "t" stands for the number of years.

BY THE COURT:


*/s/ Joseph F. Leeson, Jr.*
JOSEPH F. LEESON, JR.
United States District Judge